UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:19-cr-265-MOC

| UNITED STATES OF AMERICA, | ) |  |
|---|---|---|
|  | ) |  |
| vs. | ) |  |
|  | ) | **ORDER** |
| **CHRISTOPHER DAVID BROWN,** | ) |  |
|  | ) |  |
| Defendant. | ) |  |
|  | ) |  |

**THIS MATTER** is before the Court on Defendant's pro se Motion for Compassionate Release/Reduction of Sentence. (Doc. No. 33). Defendant seeks early release from prison under 18 U.S.C. § 3582(c)(1)(A) due to his medical conditions and the risk of contracting COVID-19. The Government has responded in opposition to the motion.

### I. BACKGROUND

Defendant Brown pled guilty on January 27, 2020, to a two-count Bill of Information, alleging conspiracy to distribute and possess cocaine and cocaine base and possession with intent to distribute 500 grams or more of cocaine in violation of 21 U.S.C. §§ 846, 841(b)(1)(B), and 841(a)(1). See (Acceptance and Entry of Guilty Plea, Doc. No. 15). The charges arose from Defendant's attempt to smuggle 932 grams of powder cocaine and 28.40 grams of crack cocaine through the Charlotte-Douglas International Airport (CLT) on January 13, 2019. (PSR, Doc. No. 27).

Defendant arrived at CLT on a flight from Los Angeles. (Id. at ¶ 6). The cocaine was in Defendant's checked baggage, within vacuum sealed packages, hidden inside a rice box and a chocolate snack cake box. (Id. at ¶ 8). The drugs were discovered when a drug canine altered to

-1-

Defendant's suitcase. (Id. at ¶ 7). Defendant consented to law enforcement's search of the bag when he went to collect it in CLT's baggage claim area. At that time, Defendant also possessed $3,030 in U.S. currency on his person. (Id.). Defendant initially denied placing the narcotics inside his luggage. (Id. at ¶ 17). Defendant eventually admitted that he served an active role in a major drug-trafficking organization and at the time of his arrest was delivering cocaine from Los Angeles to his coconspirators in South Carolina. (Id. at ¶ 22).

Defendant has an extensive criminal record. At age 17, he was convicted under South Carolina's Youthful Offender Act to felony burglary, arson, and safe cracking after breaking into a private residence in the middle of the night and using explosives in an attempt to open a safe. (Id. at ¶ 37). At age 21, Defendant received a suspended sentence for possession with intent to distribute cocaine. (Id. at ¶ 39). This conviction was followed by Defendant's illegal possession of a weapon and two incidents of driving while intoxicated (DWI). (Id. at ¶¶ 41–44).

Pursuant to a motion by the Government, Defendant's offense level was reduced from an offense level 21 to offense level 18. See (Doc. No. 30). On September 16, 2020, this Court sentenced Defendant to 36 months of imprisonment and four years of supervised release. (Id.). In reaching its sentence, the Court considered Defendant's physical and mental disabilities, including that part of his right hand had been amputated as a result of burns suffered in a fireworks explosion and treatment for various mental conditions resulting from his brother's suicide when he was a child. See (Doc. No. 27 at ¶¶ 58–62).

Defendant Brown, now age 38, is currently serving his sentence at FCI Fort Dix in New Jersey, with an anticipated "good time" release date of November 5, 2022. (Doc. No. 33). Defendant has been detained since his plea hearing on January 21, 2020. See (Doc. No. 27 at 1).

According to Bureau of Prison (BOP) records, he will be eligible for transfer to home confinement on July 20, 2022. Defendant has served approximately 25 months of his 36-month sentence and has approximately 26 days credit for good conduct time. However, he lost approximately 41 days good time credit for his possession of a cell phone and cell phone charger while in BOP custody.

On or about October 18, 2021, Defendant submitted a request for compassionate release to the warden at FCI Fort Dix, which request was denied on or about December 17, 2021. On January 31, 2022, Defendant filed the pending pro se motion. (Doc. No. 33). Defendant requests compassionate release based on his medical history—which is described in the PSR—as well as the BOP's recent diagnosis of ulcerative colitis. (Id. at 2–3). Defendant BOP medical records as well as his motion confirms that Defendant has received at least two doses of Pfizer's COVID-19 vaccine. (Id. at 11–12). Defendant's BOP Medical records also reflect that BOP undertook appropriate diagnosis and treatment of Defendant's ulcerative colitis and has provided appropriate medication and treatment for his depression and anxiety.

**II.     DISCUSSION**

By its terms, 18 U.S.C. § 3582(c)(1)(A) permits the Court to reduce the defendant's term of imprisonment "after considering the factors set forth in [18 U.S.C. § 3553(a)]" if the Court finds, as relevant here, that (i) "extraordinary and compelling reasons warrant such a reduction" and (ii) "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." § 3582(c)(1)(A)(i). As the movant, the defendant bears the burden to establish that he or she is eligible for a sentence reduction. United States v. Jones, 836 F.3d 896, 899 (8th Cir. 2016); United States v. Green, 764 F.3d 1352, 1356 (11th Cir. 2014).

The Sentencing Commission has issued a non-binding policy statement addressing motions for reduction of sentences under § 3582(c)(1)(A).[1] As relevant here, the non-binding policy statement provides that a court may reduce the term of imprisonment after considering the § 3553(a) factors if the Court finds that (i) "extraordinary and compelling reasons warrant the reduction"; (ii) "the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)"; and (iii) "the reduction is consistent with this policy statement." U.S.S.G. § 1B1.13.

The policy statement includes an application note specifying the types of medical conditions that qualify as "extraordinary and compelling reasons." First, that standard is met if the defendant is "suffering from a terminal illness," such as "metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, [or] advanced dementia." U.S.S.G. § 1B1.13, cmt. n.1(A)(i). Second, the standard is met if the defendant is: (I) suffering from a serious physical or medical condition, (II) suffering from a serious functional or cognitive impairment, or (III) experiencing deteriorating physical or mental health because of the aging

---

[1] The Fourth Circuit has held that the policy statement is no longer binding on courts deciding compassionate release motions because U.S.S.G. § 1B1.13 was enacted before the First Step Act. United States v. McCoy, 981 F.3d 271 (4th Cir. 2020). Specifically, the Fourth Circuit held that the policy statement found in U.S.S.G. § 1B1.13 does not apply to compassionate release motions brought by inmates under 18 U.S.C. § 3582(c)(1)(A)(i). Id. at 281–83. The McCoy Court reasoned that, because Section 1B1.13 applies only to motions brought by the Bureau of Prisons, it cannot be the policy statement applicable in circumstances where defendants bring their own motions for compassionate release. Id. In place of the no-longer-applicable policy statement, McCoy permits "courts [to] make their own independent determinations of what constitutes an 'extraordinary and compelling reason[ ]' under § 3582(c)(1)(A), as consistent with the statutory language[.]" Id. at 284. The McCoy Court noted, however, that Section 1B1.13 "remains helpful guidance even when motions are filed by defendants." Id. at 282 n.7. Because this Court finds that the policy statement is extremely helpful in assessing motions for compassionate release brought by defendants, the Court will rely on it as guidance.

process, that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover. U.S.S.G. § 1B1.13, cmt. n.1(A)(ii). The application note also sets out other conditions and characteristics that qualify as "extraordinary and compelling reasons" related to the defendant's age and family circumstances. U.S.S.G. § 1B1.13, cmt. n.1(B)-(C).

Finally, in addition to the non-binding policy statement, the Fourth Circuit has recently clarified that courts may make their own independent determinations as to what constitute "extraordinary and compelling reasons" to warrant a reduction of sentence under Section 3582(c)(1)(A). United States v. McCoy, 981 F.3d 271 (4th Cir. 2020).

The mere existence of the COVID-19 pandemic, which poses a general threat to every non-immune person in the country, cannot alone provide a basis for a sentence reduction. The conditions described in U.S.S.G. § 1B1.13 encompass specific serious medical conditions afflicting an individual inmate, not generalized threats to the entire population. As the Third Circuit has held, "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release." United States v. Raia, 954 F.3d 594, 597 (3d Cir. 2020).

That does not mean, however, that COVID-19 is irrelevant to a court's analysis of a motion under Section 3582(c)(1)(A). If an inmate has a chronic medical condition that has been identified by the CDC as elevating the inmate's risk of becoming seriously ill from COVID-19, that condition may satisfy the standard of "extraordinary and compelling reasons." Under these circumstances, a chronic condition (i.e., one "from which [the defendant] is not expected to recover") reasonably may be found to be "serious" and to "substantially diminish[] the ability of

the defendant to provide self-care within the environment of a correctional facility," even if that condition would not have constituted an "extraordinary and compelling reason" absent the risk of COVID-19. U.S.S.G. § 1B1.13, cmt. n.1(A)(ii)(I).

Defendant's motion will be denied because he has failed to show extraordinary and compelling circumstances warranting his early release from prison. Here, as the Government notes, the CDC's list of risk factors was most recently updated on March 29, 2021. See https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html. It reports a list of conditions that "can make you more likely to get severely ill from COVID-19." Here, Defendant presents a COVID-19 risk factor related to his diagnosis of depression.[2] However, Defendant does not present an extraordinary and compelling reason for early release because he has been fully vaccinated. By being vaccinated, Defendant has provided effective "self-care" against the virus, and does not present any extraordinary and compelling reason allowing compassionate release. See United States v. Butler, 2022 WL 317753, at *4 (E.D. Mich. Feb. 2, 2022) ("Because existing COVID-19 vaccines diminish the health risks of the Delta and Omicron variants, and these vaccines are available to all federal prisoners, incarceration itself does not increase the danger of COVID-19 to Defendant.").

Even if Defendant could show extraordinary and compelling circumstances warranting his early release because of his medical conditions, which he cannot, the Court must also consider the § 3553(a) factors, as "applicable," as part of its analysis. See 18 U.S.C. § 3582(c)(1)(A); United States v. Chambliss, 948 F.3d 691, 694 (5th Cir. 2020). As demonstrated

---

[2] While Defendant's motion cites several medical studies that indicate ulcerative colitis and similar inflammatory bowel conditions pose a higher risk of hospitalization from COVID-19, ulcerative colitis does not yet appear on the CDC's list of high-risk conditions.

-6-

by his criminal history and BOP disciplinary history, Defendant continues to present a danger to the community. In the instant offense, Defendant flew from Los Angeles to Charlotte, North Carolina carrying nine-hundred-thirty-two (932) grams of powder cocaine and twenty-eight-point-forty (28.40) grams of crack cocaine, hidden inside his suitcase. (Doc. No. 27 at ¶ 12). Defendant's drug trafficking clearly presented a significant danger to the community. Moreover, this recent criminal conduct took place when Defendant was 35 years old and suffering from some of the same medical and mental conditions he presents today. As noted, Defendant also has a record of felony criminal conduct going back to his youth.

In sum, Defendant fails to demonstrate how early release from his sentence for a serious drug crime protects the community, reflects the seriousness of his offense, promotes respect for the law, and provides just punishment for his offense. See 18 U.S.C. § 3553(a)(2)(A). Consideration of the factors above shows that Defendant's release at this point is inappropriate based on the offense of conviction, his vaccination and managed medical condition, and the danger he poses to the safety of the community.

In sum, for all these reasons, the Court denies Defendant's motion. This Court notes that, in light of United States v. McCoy, the Court has made its own independent determination as to what constitute "extraordinary and compelling reasons" to warrant a reduction of sentence under Section 3582(c)(1)(A). Defendant has simply not presented "extraordinary and compelling reasons" to warrant a reduction of sentence under Section 3582(c)(1)(A). Having thus considered defendant's motion and reviewed the pleadings, the Court enters the following Order.

**ORDER**

-7-

Case 3:19-cr-00265-MOC-DCK    Document 40    Filed 03/25/22    Page 7 of 8

**IT IS, THEREFORE, ORDERED** that Defendant's pro se Motion for Compassionate Release/Reduction of Sentence, (Doc. No. 33), is **DENIED**.

Signed: March 25, 2022

Max O. Cogburn Jr
United States District Judge